## Herbert Prentice Crane, Jr., for use of Grover C. Niemeyer, Appellee, v. Illinois Merchants Trust Company, Appellant.

### Gen. No. 30,137.

1. FRAUDULENT CONVEYANCES—*creation of spendthrift trust for trustor's benefit.* A debtor cannot create a spendthrift trust, and thus make his property not subject to existing debts, whether or not the trust is secret.

2. EXECUTION—*effect of return nulla bona.* Returns of executions *nulla bona* are prima facie evidence that judgment debtor has no property other than that claimed to have been transferred in fraud of creditors.

3. FRAUDULENT CONVEYANCES—*when creation of trust presumptively fraudulent.* Creation of spendthrift trust by debtor leaving no property for judgment creditors was presumptively fraudulent.

4. GARNISHMENT—*personal property subject to spendthrift trust.* General rule that a judgment creditor in garnishment acquires no greater rights against the garnishee than the debtor has and can only recover such indebtedness as could be recovered by debtor in action of debt, or *indebitatus* assumpsit, is subject to exception in cases of fraud affecting rights of judgment creditors, as where judgment debtor has created a spendthrift trust for his own benefit.

Appeal by defendant from the Superior Court of Cook county; the Hon. TIMOTHY D. HURLEY, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Affirmed. Opinion filed October 6, 1925.

McCULLOCH & McCULLOCH, for appellant; WILLIAM D. DOGGETT, of counsel.

MACLAY HOYNE, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

By this appeal, defendant seeks to have reversed a judgment against it for $2,878.60 in a garnishment proceding.

In August, 1924, Grover C. Niemeyer, an attorney,

recovered a judgment against Herbert Prentice Crane, Jr., upon a promissory note for $2,500, given for services rendered prior to September 15, 1921. An execution was issued at once and returned *nulla bona*, whereupon a garnishment proceeding was instituted in the name of the judgment debtor, for the use of Niemeyer, against defendant. In its answer to the interrogatories filed, the defendant stated that it was not indebted to Crane and had no property of his in its possession except such property as was held under the terms of two trust agreements, copies of which are attached to the answer.

The first of these agreements was made December 5, 1910, between Crane and the Merchants Loan & Trust Company, as trustee. It recites that by a trust agreement made in 1898, Jessie D. Crane, the mother of Herbert Prentice Crane, Jr., assigned and transferred the sum of $61,141.66 to Thomas L. Chadbourne, Jr., in trust for the uses and purposes therein stated; that the Merchants Loan & Trust Company succeeded Chadbourne as trustee; that by the terms of the trust agreement, the principal sum so transferred "is to be divided" on August 7, 1913, and Herbert Prentice Crane, Jr., "shall then be entitled to the possession of his share of said trust fund"; that Crane, Jr., "desires to be relieved from the burden and care of the control and management of his share of said trust fund and desires to be relieved from the burden and care of the proper application of the income from said trust fund during the term hereinafter mentioned," and therefore, in consideration of one dollar, he assigns and transfers to the Trust Company "all his share of the principal or corpus of said trust fund mentioned in said instrument of assignment and trust agreement, dated December 17, 1898, and any and all accumulations thereof, and all the right, title and interest of the said Herbert Prentice Crane, Jr., in and to the said trust property mentioned in said instrument," and the securities in

which the trust fund may be invested at the time for the distribution thereof, to be held by the Trust Company upon the following trusts: First, to hold and manage the same, invest and reinvest, etc.; second, to pay all expenses of the trust, taxes and assessments, and reasonable compensation for its services as trustee; third, to pay over the net income from the trust estate, in convenient instalments, from time to time, to Jessie D. Crane, mother of Herbert Prentice Crane, Jr., to be used and expended by her "in her absolute discretion, for the support, maintenance and comfort of said Herbert Prentice Crane, Jr.," and she may, in her discretion, pay all or any part of the income in her hands to him, "but no part of such income, principal or corpus of said trust estate or property shall be pledged, assigned, transferred, sold, or in any manner whatsoever anticipated, charged or encumbered by the said Herbert Prentice Crane, Jr., or be in any manner liable while in the possession of the trustee hereunder, or in the possession of said Jessie D. Crane, for the debts, contracts or engagements of the said Herbert Prentice Crane, Jr."; fourth, that in case of the death of Jessie D. Crane, or her refusal or inability to act, Crane, Jr., shall have the right to appoint her successor, and in default of such appointment, the trustee "may pay, use and expend the said net income, in its discretion, for the support, maintenance and comfort of the said Herbert Prentice Crane, Jr., and may from time, in its discretion, pay over to said Herbert Prentice Crane, Jr., any part or all of the said net income in its possession"; fifth, that when Crane, Jr., attains the age of forty years, to wit, on January 5, 1924, the trustee shall deliver "all the principal or corpus of said trust estate" to said Crane, Jr., on his own personal receipt; sixth, that if Crane, Jr., should die before receiving the principal, then such principal, together with any income remaining in the possession of the trustee, shall be delivered as he may direct by his last will and testament or in

default of such direction, then to his heirs at law; seventh, that the trustee may resign at any time on thirty days' notice in writing, in which case Crane, Jr., may appoint a successor in trust, or, in default of such appointment, a successor may be appointed by any court of original general jurisdiction in Cook county, Illinois.

The second of such agreements was executed November 28, 1923. It is dated October 17, 1923, and is between Herbert Prentice Crane, Jr., and the defendant. After stating that the name of the trustee was changed to that of defendant, it contains the same recitals and provisions as the agreement of December 5, 1910, and extends all such provisions for one year, until January 5, 1925.

The answer further states that under the first trust agreement the Merchants Loan & Trust Company received, on December 5, 1910, stocks, bonds and cash aggregating $56,250.96 as the distributive share of said Crane, Jr., in the trust estate created by his mother, and that the defendant now holds as trustee under the first agreement, "as extended" by the second, stocks and bonds aggregating $105,623.85.

The answer further states that on March 28, 1923, it received a notice from Grover Niemeyer that Crane, Jr., had given him a promissory note for $2,500 payable on January 5, 1924, and had executed an assignment of enough of the trust fund in its possession to pay the note with interest.

The judgment order states that the cause was submitted to the court for trial without a jury upon the affidavit for garnishment, the answer of the garnishee, the replication of the plaintiff, a stipulation of the parties, and that the court heard "the evidence, the statements, admissions and arguments of the attorneys for the respective parties." The bill of exceptions shows that no testimony was taken, but that the facts stated in the answer were accepted as true, that defendant stipulated on the trial "that the services

for which the note was given, upon which judgment was rendered" in Niemeyer's favor against Crane, "were rendered before September 15, 1921, and that the note was made payable January 5, 1924." The bill of exceptions also shows that this case was tried with another in which Frederick A. Bangs was the beneficial plaintiff, brought upon a judgment in his favor against Crane, entered the same day, upon a like note given at the same time for $7,500 for like services, and payable at the same time.

From the agreements set forth in defendant's answer, it is clear that but for the agreement of December 5, 1910, between Herbert Prentice Crane, Jr., and the Merchants Loan & Trust Company, Crane would have been entitled to demand and receive from that company on August 7, 1913, all his share of the trust fund created by his mother for his benefit in 1898, and that the amount of such share at that time was in excess of $50,000. It is equally clear, from the documents in evidence and the stipulations of the parties in these suits, that when the second agreement was made, in October or November, 1923, Crane, Jr., had become indebted for services rendered long prior to that time to Niemeyer in the sum of $2,500 and to Bangs in the sum of $7,500, and had given them his notes payable on January 5, 1924, and that but for the execution of the second agreement, Crane would have been entitled to receive and doubtless would have received from defendant, on the day his notes to Bangs and Niemeyer were due, the possession of personal assets worth over $100,000. By the execution of that agreement with defendant, Crane permitted and authorized defendant to retain all of that fund in its possession for another year, in order to provide for his own support, comfort and maintenance, and, as the agreement expressly states, to prevent any part of the fund from being charged with the payment of his debts during that time. During that year, he suffered executions against him to be returned: "No

property found and no part satisfied," thus giving rise to the presumption that he had no other property with which to pay his debts. Both such agreements were voluntary, without consideration, and for the expressly declared purpose of placing such property beyond the reach of Crane's creditors. Under all the authorities, such an agreement is fraudulent and void as to creditors.

The rule on this subject is expressed as follows in 27 Corpus Juris 600:

"The general rule is well settled that a person cannot settle his estate in trust for his own benefit, so as to be free from liability for his debts. * * * The fact that the grantor is a spendthrift is of course immaterial. * * * Property so settled is assets in the hands of the trustee for the payment of debts; and the giving of unlimited discretion to the trustee does not take the case out of the general rule. * * * The rule is founded upon the self-evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other person. The intention of the parties to such transfer, whether honest or fraudulent, is wholly immaterial."

To the same effect are 25 R. C. L. 355, sec. 6, and Bump on Fraudulent Conveyances (3d Ed.), p. 210. In 12 R. C. L. p. 544, sec. 68, it is said:

"No effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it, but require his creditors to await his pleasure for the payment of their claims out of it. A man cannot be the beneficial owner of property and still have it exempt from his debts. Subsequent as well as existing creditors may have such transaction declared fraudulent. A conveyance to the use of the grantor is fraudulent in law, and void as to creditors, without regard to the intent with which it was made."

That this is the law in Illinois, as well as elsewhere, is shown by the following quotation from *McKey v. Cochran*, 262 Ill. 376, 384:

"A conveyance of real estate by a debtor to another, to be held wholly or in part in trust for him, is a fraud on creditors whether so intended or not, as it places beyond their reach a valuable right and gives to the debtor the beneficial enjoyment of what rightfully belongs to them. (*Moore v. Wood*, 100 Ill. 451; *Mitchell v. Sawyer*, 115 Ill. 650; *Beidler v. Crane*, 135 Ill. 92; *Bostwick v. Blake*, 145 Ill. 85.) In such a case the conveyance is void as to existing and subsequent creditors. The fraud is a continuing one, and may actually operate as such, as well in reference to debts contracted after as before the conveyance. (*Guffin v. First Nat. Bank*, 74 Ill. 259; *Jones v. King*, 86 Ill. 225; *Gordon v. Reynolds*, 114 Ill. 118; *Bostwick v. Blake, supra.*)"

That case was cited and followed in *People's Bank v. Wood*, 207 Ill. App. 602.

The rule stated has been applied most frequently, perhaps, in cases where a conveyance of property has been made by one person to another in consideration of a promise by the latter for the future support of the former. *Harting v. Jockers*, 136 Ill. 627, was such a case. Jockers was planning to build a house on his farm and asked one Heuster for a loan of $2,000 for that purpose. Heuster was a widower, 81 years old, without a home and was possessed of $2,000 in money, $400 in personal property and some notes of the face value of $1,800, which were supposed to be good at that time but afterwards turned out to be worthless. He proposed to Jockers to pay Jockers the $2,000 he desired to borrow, if Jockers would build his house larger, so that Heuster could have a room of his own in it and Jockers would board him, do his washing, etc., and take care of him while he lived. Jockers consented to this and an agreement to that effect was entered into, which was fully carried out by both parties in good faith. Less than a year thereafter Heuster died and a claim was allowed against his estate in favor of Harting upon a note which had been given by Heuster to his son nearly ten years before and

which was payable one year after its date. The estate being insolvent, Harting filed a bill to charge Jockers with the payment of his claim. The circuit and Appellate Courts held that no presumption of fraud, or intent to hinder or delay creditors, could be inferred from the transfer by Heuster to Jockers, for the reason that Heuster retained property which he evidently believed at the time to be sufficient to satisfy all his existing creditors, viz., the notes for $1,800 executed by supposedly solvent makers; and the Supreme Court said that while the burden was upon Jockers "to overcome the presumption arising from the conveyance or transfer of property to him, for the use and benefit of Heuster, by showing circumstances which rebut the presumption of fraud, we are not prepared to say that the lower courts have erred in their finding." In its opinion the court said (p. 631):

"A debtor may not, by gift or other voluntary transfer of his property to others, or by transfer and conveyance of it for his own use, as, for his future support, hinder or delay his creditors in the collection of their just demands. * * * It is wholly immaterial that no actual fraud is shown to have been intended, for the result would be the same,—that is, to give the debtor the beneficial enjoyment of that which rightfully belongs to the creditor; and the transaction is therefore wanting in the good faith necessary to the validity of the contract. If the act done will necessarily have the effect of hindering and delaying creditors, the law presumes that it was done with that fraudulent purpose and intent."

In *Annis v. Bonar*, 86 Ill. 128, in which a debtor conveyed all his real estate to another, taking back a written instrument binding such other to support and maintain the grantor and his family during his lifetime, the court said: "The law allows no man, beyond the specific exemptions of the statute, by any form of contract or mode of disposing of property, whatever it may be, to secure the use of his property to himself, to the exclusion of his creditors."

In *Petty v. Moores Brook Sanitarium,* 110 Va. 815, it was held that the owner of property, even though a spendthrift, cannot convey his property to a trustee for the sole benefit of the grantor for life, with power to dispose of the trust property at his death, and yet exempt the property from the payment of debts he may thereafter contract. In that case, the court reviews some of the authorities on this question, and closes as follows: "No case has been cited and we are not aware of one which has carried the doctrine of spendthrift trusts to the extent proposed in this case. A man who enjoys the benefits of wealth, however imprudent and shiftless he may be, should also bear its responsibilities, one of which is liability for his just obligations."

These quotations and citations could be multiplied almost indefinitely. There is no dissent in any of the decisions from the general principles thus stated. It is true that some of the decisions hold that such conveyances are void only as to existing creditors, while others, including *McKey v. Cochran, supra,* and many cases in other States (see 27 Corpus Juris 600), hold that the conveyance may be avoided by subsequent as well as existing creditors. But the question whether the right to attack such a conveyance is available to subsequent as well as to existing creditors is not material in the present case, for the reason that Niemeyer was a creditor of Crane, Jr., at the time the agreement of October 17, 1923, was made and for nearly two years before that time, and that fact was known to the defendant in March, 1923.

Defendant's counsel concedes that the rule in other States is as above stated, but insists that in this State the rule applies only in cases where there has been a conveyance of property with a *secret* trust reserved for the benefit of the grantor. If such a distinction exists, it cannot avail either Crane or the defendant, for although their agreement was in writing, there is no evidence that it was known to any one but them.

So far as the evidence shows, the agreement of October 17, 1923, was as secret as if it had been a private oral understanding. It is apparent that it was not known to Bangs or Niemeyer, for their notes were made payable on January 5, 1924,—the very day the *first* agreement expired. In *Tyler v. Tyler,* 126 Ill. 525, 539, it is said: "It is quite manifest that a trust, though expressed in writing, may be secret,— as, if the fraudulent grantee or assignee, without the knowledge of any one other than the fraudulent grantor or assignor, execute a writing declaring the trust, and hand it to the fraudulent grantor or assignor, and he thereafter keep it secretly in his own possession. The writing may be as effectually hid from the world at large, as is the memory of the fact not reduced to writing." However, no case has been cited, and we have found none, holding that the general rule applies *only* to cases where a *secret* trust was shown. The rule unquestionably applies to such cases, but it applies as well to all cases where the purpose or effect of the trust agreement is to hinder and delay creditors in the collection of their just claims, "whether it is open or secret—expressed in the conveyance, or the subject of a private understanding." (*Wilson v. American Nat. Bank,* 7 Colo. App. 194, 42 Pac. 1037.) This quotation is taken from a case which was decided under a statute making such trusts void as to creditors, but the statute was only declaratory of the general rule apart from any statute, as is shown by the foregoing citations. In 2 A. L. R. 1438, the cases are collected in a note as to the question of the validity as against creditors of a conveyance made in consideration of an agreement to support the grantor. It states the general rule substantially as we have stated it, and adds that: "In a number of cases the invalidity of a conveyance in consideration of the future support of the grantor has been put on the ground that it created a secret trust for the benefit of the grantor, though, as appears

from the cases heretofore cited, the secrecy of the consideration is not essential to the application of the general rule." Among the cases thus cited are *Annis v. Bonar, supra, Harting v. Jockers, supra,* and several others in Illinois, in addition to many from other States.

It has been held that the rule stated does not apply to a case where a solvent debtor conveys property to another to hold for the grantor's benefit, provided he retains enough other property to pay all his *existing* creditors. This qualification or exception to the general rule was recognized in the two cases last cited; and on this theory, it is contended by defendant's counsel that there is no proof that Crane did not have enough other property to pay all his debts when the trust agreement, dated October 17, 1923, was executed. While there is no direct proof that such was the fact, it does appear that less than a year after that time, the Niemeyer and Bangs judgments were entered against him for over $10,000 and that executions were returned *nulla bona* in both cases. Such returns are prima facie evidence that Crane had no other property at the time of such returns and we think such returns, together with the facts regarding the making of the notes and partial assignment to Niemeyer and Bangs of the funds which, by the *first* trust agreement, were payable to Crane by defendant on January 5, 1924, were prima facie evidence that he had no other property in October or November, 1923. (*Vanston v. Davidson,* 41 Ill. App. 646, 648; *Strong v. Lawrence,* 58 Iowa 55.) Moreover, the case of *Harting v. Jockers, supra,* holds that such a transfer of property as was made to defendant at that time is presumptively fraudulent, and that the burden of proof is upon the party asserting the validity of the transfer to overcome that presumption. Defendant made no attempt to sustain the burden of proof resting upon it to show, if it could, that Crane retained other property sufficient to pay his exist-

ing creditors. Under the authorities, therefore, Crane's transfer at that time of all his property to defendant, for the purposes stated in the agreement, was fraudulent and void as to such creditors.

The record shows that in the trial court the main, if not the only, contention of defendant was that the property in question could not be reached by garnishment process, but that the transfer thereof could only be attacked by a bill in equity. This contention is not made here in that form, but in substance it is repeated by including among the points and authorities in defendant's brief, first, that such a conveyance, even though fraudulent as to creditors, is good as between the parties to it, and cannot be set aside at the suit of the grantor; and second, that "a garnisheeing creditor can only recover such property as the judgment debtor might recover at law from the garnishee." These propositions, though stated in the brief, are not argued; and while they are generally correct, they are not applicable to a case of this character. The general rule that a judgment creditor in a proceeding by garnishment acquires no greater rights against the garnishee than the judgment debtor has, and therefore can only recover such indebtedness as could be recovered by the debtor in an action of debt, or *indebitatus* assumpsit, against the garnishee (*Webster v. Steele*, 75 Ill. 544), is subject to an exception in cases of fraud affecting the rights of judgment creditors (Drake on Attachment, sec. 456; *Commercial Nat. Bank v. Kirkwood*, 172 Ill. 563, 567; *Humphreys v. Atlantic Milling Co.*, 98 Mo. 542, 549; *First Nat. Bank v. Knowles*, 67 Wis. 373, 390); and in cases where money or personal property of a debtor has been transferred by him for the purpose of defrauding creditors, the transferee may be held liable in a garnishment proceeding for the money or property so conveyed or its proceeds. (Drake on Attachment, sec. 458; *Stevens v. Dillman*, 86 Ill. 233; *Henry v. Murphy & Co.*, 54 Ala. 246, 256; *Cohn v. Malo,*

198 Ill. App. 538, 545; 27 Corpus Juris p. 708, sec. 549.) If, as the authorities agree, a transfer of property by one person to another for his own benefit for the purpose of hindering and delaying, and thereby defrauding, his creditors, is void as to such creditors, the transfer is a nullity and may be so treated in a court of law as well as in a court of equity, except, perhaps, where the property transferred is real estate, in which case the aid of a court of equity may be necessary in order to subject it to the lien of a creditor's judgment.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.