# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Rush University Medical Center v. Sessions*, 2011 IL App (1st) 101136

---

| | |
|---|---|
| Appellate Court Caption | RUSH UNIVERSITY MEDICAL CENTER, Plaintiff-Appellee, v. ROGER SESSIONS and JAMES L. ARNOLD, as Trustees of the Sessions Family Trust, u/a dated February 1, 1994; and ROGER SESSIONS, as Trustee of the Robert W. Sessions Revocable Living Trust, u/a dated April 1, 2005, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-1136 |
| Filed | August 5, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to enforce decedent's pledge to plaintiff university, the trial court properly denied defendant trustees' motion to substitute judge, the entry of summary judgment for defendants on the count alleging that decedent's transfer of assets to his self-settled trust was *per se* fraudulent was error, and the appellate court lacked jurisdiction to review the order denying defendants' motion for summary judgment on the count alleging that the pledge was a valid, binding and enforceable contract that bound decedent and his "assigns" and sought to reach the trust's assets. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-P-003595; the Hon. Henry Budzinski and the Hon. James Kennedy, Judges, presiding. |
| Judgment | Affirmed in part and dismissed in part; cause reversed and remanded in part. |

| Counsel on Appeal | Edward T. Joyce and Jennifer L. Doherty, both of Edward T. Joyce & Associates, P.C., of Chicago, for appellants. |
| | |
| | James R. Hellige, John T. Brooks, and Samantha E. Weissbluth, all of Foley & Lardner, LLP, of Chicago, for appellee. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Evan Siegel, Assistant Attorney General, of counsel), for intervening appellee. |
| | |
| Panel | JUSTICE CAHILL delivered the judgment of the court, with opinion Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendants Roger Sessions and James L. Arnold (trustees) appeal orders of summary judgment entered against them and in favor of plaintiff Rush University Medical Center (Rush). Defendants also appeal the court's refusal to order the recusal of Judge Budzinski. We affirm in part, dismiss in part and reverse and remand in part.

¶ 2 In 1994, Robert W. Sessions (decedent) created the Sessions Family Trust, maintained in an offshore account in the Cook Islands. In 1995, decedent made an irrevocable pledge to Rush by letter for $1.5 million to build a new president's house. In 1996, decedent sent Rush another letter, confirming the pledge:

> "I agree to provide in my will, living trust and other estate planning document *** that (1) this pledge, if unfulfilled at the time of my death, shall be paid in cash upon my death as a debt and (2) that if this pledge is unenforceable for any reason, a cash distribution shall be made under such will, living trust or other document to Rush University in an amount equal to the unpaid portion of such pledge at the time of my death."

Decedent executed successive codicils to his will, providing that any amount remaining unpaid on his $1.5 million pledge as of his death would be given to Rush on his death. In reliance on decedent's pledge, Rush built a president's house on the Rush University campus in 1996 at a cost in excess of $1.5 million.

¶ 3 In February 2005, decedent was diagnosed with cancer. He then executed the Robert W. Sessions Revocable Living Trust. On March 10, 2005, decedent executed a new will, revoking all previous wills and codicils. Decedent died on April 25, 2005. Before his death, decedent had made no payments toward the $1.5 million pledge to Rush.

-2-

¶ 4 Rush filed a claim against the Sessions estate (estate) to enforce the $1.5 million pledge. The estate contested Rush's claim to the $1.5 million and litigation ensued. Rush moved for summary judgment against the estate on it's claim, which was granted on August 31, 2005. The estate appealed, and we affirmed the circuit court in a summary order (*In re Estate of Sessions*, No. 1-07-0202 (2007) (unpublished order under Supreme Court Rule 23).

¶ 5 The Sessions estate was found to contain less than $100,000. On April 4, 2006, Rush filed a supplementary claim against the Sessions Family Trust and the Robert W. Sessions Revocable Living Trust (trusts). Count I alleged that decedent transferred assets to the trusts with the actual intent to hinder, delay and defraud Rush in the collection of its claim against the estate. Count I was based on section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act (Fraudulent Transfer Act) (740 ILCS 160/1 *et seq.* (West 2006)). Count II alleged that decedent's pledge to Rush was a valid, binding and enforceable contract that bound decedent as well as his "assigns" and sought to reach the assets of the trusts.

¶ 6 Count III alleged that decedent's transfer of assets to his self-settled trust was *per se* fraudulent under the holdings in *Crane v. Illinois Merchants Trust Co.*, 238 Ill. App. 257 (1925), and *Barash v. McReady* (*In re Morris*), 151 B.R. 900, 906-07 (Bankr. C.D. Ill. 1993), and that Rush should be entitled to reach the assets of the trusts to satisfy the $1.5 million pledge.

¶ 7 The trusts filed motions for summary judgment on counts II and III of Rush's complaint. Rush filed a cross-motion for partial summary judgment on count II. The supplemental proceeding was stayed pending the outcome of the estate's appeal. Rush later added a fourth count to its amended complaint, alleging constructive fraud under section 5(a)(2) of the Fraudulent Transfer Act. Counts I and IV were not part of the parties' motions for summary judgment.

¶ 8 As a result of the estate's appeal decided in favor of Rush, Rush became a creditor of the estate. After mediation failed, the court set a hearing date for the trusts' motion for summary judgment on counts II and III and Rush's cross-motion for partial summary judgment on count II.

¶ 9 On October 21, 2008, the trial court, with Judge Budzinski presiding, heard oral argument on the parties' cross-motions for summary judgment. The court granted Rush's cross-motion for summary judgment on count II, finding that the pledge bound decedent's "assigns." The court explained that "[t]he language is clear *** that in [decedent's] letter to the hospital he indicated that [the] pledge was binding on his heirs, successors and assigns. And even the trust provides the payment of the pledge if it hasn't been satisfied." The court denied the trusts' motion for summary judgment on counts II and III.

¶ 10 On November 25, 2008, the trusts filed a petition under section 2-1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(3) (West 2006)) to substitute judge for cause. The trusts argued that allowing Judge Budzinski to continue hearing the matter would prejudice defendants because he appeared to have reached a conclusion on counts I and IV of Rush's complaint without having heard evidence on those issues or allowing defendants to complete discovery. The trusts pointed to Judge Budzinski's finding at the October 21 proceeding that decedent had intended to defraud Rush, though counts II and III do not contain fraud

elements. The trusts also argued Judge Budzinski's findings were contrary to the evidence and demonstrated bias in favor of Rush.

¶ 11    The petition to substitute Judge Budzinski for cause was transferred to Judge James Kennedy for a hearing. On May 5, 2009, Judge Kennedy denied the petition, finding that "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceeding or prior proceeding do not constitute a basis for a partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgement impossible. *** I don't think Judge Budzinski displayed a deep-seated favoritism or antagonism that would make fair judgment impossible."

¶ 12    On May 15, 2009, the trusts asked Judge Kennedy for a finding under Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) or, in the alternative, for certification under Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb 26, 2010)). The trusts contended that: (1) if this court overturned the circuit court's denial of the petition, all orders entered by Judge Budzinski after May 5, 2009, would be null and void; and (2) there was no just reason for delaying appeal. Judge Kennedy denied the trusts' motion and remanded the matter to Judge Budzinski.

¶ 13    Rush then filed a motion for summary judgment on count III of its complaint. On March 24, 2010, Judge Budzinski granted the motion, finding the trusts void as to Rush's $1.5 million judgment on its claim against decedent's estate, plus statutory interest, and the trusts liable for payment to Rush on the pledge.

¶ 14    On appeal, defendants contend that: (1) the court erred in denying the trusts' motion for summary judgment on counts II and III; (2) the court erred in granting Rush's motion for summary judgment on count III; (3) Judge Kennedy erred in not recusing Judge Budzinski because Judge Budzinski prejudged the counts involving decedent's fraudulent intent where such counts were not before the court; and (4) the orders entered by Judge Budzinski since May 5, 2009, should be determined null and void.

¶ 15    We first address defendants' claim that the court erred in refusing to grant their motion to substitute Judge Budzinski for cause.

¶ 16    A trial judge is presumed to be impartial, and the burden is on the party alleging partiality to overcome this presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280, 779 N.E.2d 1115 (2002). The party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias. *Eychaner*, 202 Ill. 2d at 280.

¶ 17    "Where bias or prejudice is invoked as the basis for seeking substitution, it must normally stem from an extrajudicial source, *i.e.*, from a source other than from what the judge learned from her participation in the case before her." *In re Estate of Wilson*, 238 Ill. 2d 519, 554, 939 N.E.2d 426 (2010).

¶ 18    " '[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings *** do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible*.' " (Emphasis added.) *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 19    " 'A reviewing court will not reverse a determination on allegations of judicial prejudice

unless the finding is against the manifest weight of the evidence.' " *Barth v. State Farm Fire & Casualty Co.*, 371 Ill. App. 3d 498, 506, 867 N.E.2d 1109 (2007) (quoting *Jacobs v. Union Pacific R.R. Co.*, 291 Ill. App. 3d 239, 244, 683 N.E.2d 176 (1997)).

¶ 20 Defendants claim they have satisfied the "two-part test" for disqualification because Judge Budzinski prejudged Rush's fraudulent intent theories in counts I and IV because he found decedent never intended to fulfill his pledge, even though counts II and III did not contain fraud elements and discovery had not yet been completed on Rush's fraudulent intent theories in counts I and IV. Defendants point to Judge Budzinski's comments at the October 21, 2008, hearing:

> "The Court is going to rule that it was the intent of the decedent to not fulfill his pledge because he did everything to avoid the payment.
>
> * * *
>
> But he never intended to pay the pledge. As all the evidence clearly shows, he did everything that is possible to avoid the payment of the pledge.
>
> * * *
>
> I think the facts are strong and clear that the decedent never intended to fulfill his pledge, and every course of action he took was with the intent to avoid the fulfillment of the pledge.
>
> He even went so far as to defraud the hospital by transferring all of his assets into trusts so they could not be reached by the hospital.
>
> So when he died, he had very little, if any, assets in his name with which to pay the pledge, and he was aware of that and I think he did defraud the hospital in that sense. It's not only the intent but also it's [fraud].
>
> Your Motion for Summary Judgment as to Counts II and III is denied."

¶ 21 We believe the trial court properly denied the request to substitute Judge Budzinski. First, there is no allegation that Judge Budzinski's comments stem from an extrajudicial source. See *In re Estate of Wilson*, 238 Ill. 2d at 554. Next, though counts I and IV were not before the court and did involve fraudulent intent, the issues concerning intent and fraud were learned by Judge Budzinski "from [his] participation in the case before [him]." *Wilson*, 238 Ill. 2d at 554; see also *Alcantar v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 650, 681 N.E.2d 993 (1997). For example, at the October 21, 2008, hearing, defense counsel admitted that "[decedent] made up his mind in 2005 when [he was] diagnosed with cancer that he didn't want to honor the pledge anymore."

¶ 22 Defendants are correct that prejudice may be proven aside from a showing that the court's comments stem from an extrajudicial source. But, we do not believe Judge Budzinski's comments in this case were "so extreme as to display clear inability to render fair judgement" or show a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 551, 555. Rather, Judge Budzinski's comments concern his observations about the merits of the allegations in the case up to that point. See *Liteky*, 510 U.S. at 551. Defendants state that the court "granted Rush relief that Rush did not request," but this is simply not true as counts I and IV were not before the court. Defendants

have not met their burden to prove a lack of impartiality. *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 248, 854 N.E.2d 774 (2006).

¶ 23 Defendants cite *People v. Robinson*, 18 Ill. App. 3d 804, 310 N.E.2d 652 (1974), but the requirement of proof beyond a reasonable doubt distinguishes that case. See *Robinson*, 18 Ill. App. 3d at 807 ("it is universally held that a judge who, before hearing a criminal case expresses conviction that the accused is guilty, cannot give that accused a fair and impartial hearing, and is thereby disqualified to sit as a trial judge").

¶ 24 Next, we lack jurisdiction to review the portion of the court's October 21, 2008, order denying defendants' motion for summary judgment as to count II. An order denying a motion for summary judgment is interlocutory in nature and not appealable. *In re Estate of Funk*, 221 Ill. 2d 30, 85, 849 N.E.2d 366 (2006); *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357-58, 718 N.E.2d 191 (1999). Counsel for defendants conceded at oral argument that this court lacks jurisdiction to consider the circuit court's ruling on count II. We dismiss that part of the appeal addressing the denial of summary judgment on count II of the complaint.

¶ 25 We have jurisdiction under Illinois Supreme Court Rule 304(a) to consider the circuit court's March 24, 2010, order granting Rush's motion for summary judgment as to count III because the court made an express finding that there was no just reason for delaying appeal of that order. We will also consider the trial court's October 21, 2008, denial of defendants' motion for summary judgment on count III because it involves the same claim on which Rush's motion for summary judgment was granted in the March 2010 order. *Arangold*, 187 Ill. 2d at 358.

¶ 26 We review *de novo* the trial court's grant of summary judgment. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389, 909 N.E.2d 830 (2009). Summary judgment is proper where the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); *Village of Palatine v. Palatine Associates, LLC.*, 406 Ill. App. 3d 973, 978, 942 N.E.2d 10 (2010). We may affirm the trial court on any basis supported by the record. *Palatine Associates*, 406 Ill. App. 3d at 979.

¶ 27 Count III of Rush's complaint alleged that decedent's transfer of assets to his self-settled trust was *per se* void under *Crane*, 238 Ill. App. 257, and *Barash*, 151 B.R. at 906-07, and that Rush should be entitled to reach the trust assets to satisfy the $1.5 million pledge.

¶ 28 In *Crane* the court held that self-settled spendthrift trusts are fraudulent and *per se* void and may be reached by other creditors. *Crane*, 238 Ill. App. at 262-63. Rush cites cases for the proposition that this principle in *Crane* has been subsequently adopted. See *Dexia Credit Local v. Rogan*, 624 F. Supp. 2d 970, 976 (N.D. Ill. 2009); *In re Marriage of Chapman*, 297 Ill. App. 3d 611, 620, 697 N.E.2d 365 (1998); *Grochocinski v. Kennedy* (*In re Miller*), 148 B.R. 510, 519 (Bankr. C.D. Ill. 1992).

¶ 29 Defendants contend that summary judgment against defendants and in favor of Rush was improper because the common law principle that self-settled trusts are *per se* fraudulent was supplanted by the Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 2006)), which provides specific mechanisms for proving a transfer by a debtor was fraudulent. Defendants maintain that the Fraudulent Transfer Act no longer makes self-settled trusts *per se*

fraudulent and that Rush was required to plead under either section 5(a)(1) or section 5(a)(2) of the statute. Those sections provide:

> "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 740 ILCS 160/5(a)(1), (a)(2) (West 2006).

¶ 30    "[A] statute will not be construed as taking away a common-law right existing at the time of its enactment unless the preexisting right is so repugnant to the statute that the survival of the common-law right would in effect deprive the statute of its efficacy and render its provisions nugatory." *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634, 872 N.E.2d 551 (2007) (citing *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907)).

¶ 31    We agree with defendants that the Fraudulent Transfer Act and the common law cannot exist in harmony. *Crane* and its progeny stand for the principle that self-settled trusts are *per se* fraudulent, but the Fraudulent Transfer Act requires a creditor to satisfy the conditions of either section 5(a)(1) or section 5(a)(2) to bring a successful fraudulent transfer claim. If the legislature intended self-settled trusts to remain *per se* fraudulent under the common law, it would not have promulgated a statute defining the conditions required to prove a transfer was fraudulent. See *Moore v. Green*, 219 Ill. 2d 470, 488, 848 N.E.2d 1015 (2006) (we presume the legislature did not intend legislation to be rendered superfluous or vaguely advisory).

¶ 32    Here, count III did not allege that decedent made a transfer to the trusts "with actual intent to hinder, delay, or defraud" Rush or that when decedent made his transfers to the trust he did not have the ability to pay his bills or made the transfer to avoid paying a future obligation. See 740 ILCS 160/5(a)(1), (a)(2) (West 2006).

¶ 33    We believe that a party is required to allege the elements contained in the Fraudulent Transfer Act to properly plead a fraudulent transfer claim. Having reversed the trial court on this basis, we need not address defendants' other contentions related to count III of Rush's complaint.

¶ 34    For the aforementioned reasons, we lack jurisdiction to review the portion of the trial court's order denying defendants' motion for summary judgment on count II of Rush's complaint, the motion to substitute judge was correctly denied, and the trial court's entry of summary judgment in favor of defendants on count III of Rush's complaint was error.

¶ 35        Affirmed in part and dismissed in part; cause reversed and remanded in part.