J. CARLTON WARD

*v.*

JOHN B. MARIE, FLORENCE S. W. MARIE and RICHARD WAYNE
PARKER, trustee.

[Decided December 19th, 1907.]

1. To establish the presumption that a trust embracing substantially
the settlor's entire estate, the object of which is to yield to the settlor
monthly installments for his support during his life out of the entire
*corpus* of the estate, and to effect a disposition of any residue at his
death as he may appoint by will, was intended to defeat future creditors
of the settlor, it is not necessary that the possibility of future creditors
of the settlor should be expressly recognized, or that an intention to bar
them should be expressly declared.

2. A trust embracing substantially the settlor's entire estate, the object
of which is to yield him monthly installments for his support during his
life out of the entire *corpus* of the estate, "free of all claims of creditors,"
and to effect a disposition of any residue at his death as he may appoint
by will, and, failing such appointment, then on the further trust as
directed, contemplates the possible creation of debts in the future by the
settlor which he expressly undertakes to bar, and cannot be said to have
been intended merely to so place the property that it would be impos-
sible for him to contract debts, and is therefore void.

3. A trust, the object of which is to yield to the settlor monthly in-
stallments for his support during his life out of the entire *corpus* of the
estate, and to effect a disposition of any residue at his death as he may
appoint by will, and, failing such appointment, then on the further trust
to pay to settlor's wife monthly installments, and on the death of both
to pay the balance to their children, and if there be none, then to pay the
balance to the next of kin, so far as it transfers personalty is a convey-
ance "for the use of the person making the same," notwithstanding that
after the making of the trust the settlor cannot immediately subject the
entire estate to his use within *2 Gen. Stat. p. 1604 § 11*, declaring convey-
ances of personalty for the use of the person making the same void as
against creditors.

4. The trust, so far as it transfers personalty, is a conveyance "for the
use of the person making the same," notwithstanding the remainder over
in default of appointment, within *2 Gen. Stat. p. 1604 § 11*.

5. Where a husband who has made a conveyance in trust void as to
his future creditors borrows money of his wife, any claim of ratification
or waiver which he or his trustee may put forth to defeat the satisfac-
tion of the wife's indebtedness out of the transferred property must be

clearly established, and, having procured the participation of his wife in the transaction set up as amounting to such ratification or waiver, he must show affirmatively that there was no abuse of the confidential relation on his part, and that as between himself and his wife his conduct in inducing or permitting her to waive her rights or alter her situation was equitable and just.

On final hearing on bill, answer and proofs.

*Mr. John B. Humphreys* and *Messrs. Robert & Hepburn* (of the New York bar), for the complainant.

*Mr. Cortlandt Parker, Jr.,* for the defendant R. Wayne Parker, trustee.

STEVENSON, V. C.

The bill was filed by the original sole complainant, J. Carlton Ward, to collect the amount of a judgment recovered by him in the supreme court of New Jersey, on May 15th, 1905, for $1,743 and costs, against the defendant John B. Marie; execution was issued and returned unsatisfied. During the progress of the suit an order was made, with the consent of all the parties to the suit, admitting as co-complainant one Marie Girardin, who is also a judgment creditor of the defendant John B. Marie, having recovered a judgment against him in the New Jersey supreme court, on February 10th, 1906, for $14,129.43 and costs, upon which execution has been issued and returned unsatisfied. The suit has been prosecuted for the satisfaction of these two judgments out of certain securities amounting to about $38,000 in the possession and control of the defendant Parker, as trustee. The other defendants, John B. Marie and Florence S. W. Marie, his wife, have submitted to a decree *pro confesso.* The defendant Parker, as trustee, practically submits to the determination of this court whether or not the estate in his hands is liable to the judgment creditors of his beneficiary, the defendant John B. Marie.

After the argument of the cause, by consent of all the parties to the suit, one Louis E. Marie, was made a co-complainant, it being admitted that he had recently, since the argument, re-

covered a judgment against the defendant John B. Marie, upon which execution had been issued and returned unsatisfied, and that this judgment occupies precisely the same relation to the securities held by the defendant Parker, as trustee, as the judgment of J. Carlton Ward, above mentioned. If the decree in this cause should direct the satisfaction of the judgment of the complainant Ward, out of the securities held by the defendant Parker, in trust, it is conceded that the decree should, in like manner, direct the satisfaction of this judgment of Louis E. Marie. The bill of complaint has been amended or will be amended by a supplementary addition, carrying out the consents of the parties above mentioned, and making Marie Girardin and Louis E. Marie co-complainants.

It will, I think, be unnecessary to set forth in detail a great many of the facts which have been the subject of investigation in this case. The view which I take of the case and of the rules of law and equity applicable to it, can, I think, be understood with the aid of a small portion of the testimony which has been taken.

The main question in the case is presented by the agreement and conveyance dated December 11th, 1888, by which the trust in question was created and property, real and personal, to the amount of about $45,000, was conveyed by the defendant John B. Marie to the defendant Richard Wayne Parker, as trustee. The conveyance transferred substantially all the property of Mr. Marie—all, I believe, except some furniture. It is the validity of this trust as against the creditors, and particularly subsequent judgment creditors of John B. Marie, which is the subject of the principal contention in the cause. By the above-mentioned instrument the grantor, John B. Marie, undertook to transfer an interest which seems to have been a legal estate in fee in certain mortgaged real estate situate in the State of New York. I understand from the testimony that this land was subsequently sold in a foreclosure suit, and that nothing ever reached the hands of Mr. Parker, as trustee, from such sale as proceeds of the equity of redemption. Whether this is true or not, is, I think, of no importance, because it seems to be admitted that the trust deed conveyed to the trustee a personal estate far beyond what will be

necessary to satisfy the claims of the complainant, with costs, if such claims are found to be payable out of such personal estate. At the time the conveyance was made by Mr. Marie to Mr. Parker, in trust, the estate conveyed, to a large extent, consisted of the interest which Mr. Marie had, as a beneficiary, in securities held by Mr. Parker and already vested in him in trust. Mr. Parker, by order of the court of chancery of New Jersey, had been constituted the trustee of a large personal estate, as successor to a former trustee, and Mr. Marie was one of the three beneficiaries. Mr. Parker, however, had not accounted; he had not separated the interest of Mr. Marie, much less had he paid it over. He had, from time to time, anticipating his discharge and the distribution of his trust estate, honored drafts of Mr. Marie and charged the amount against his (Mr. Marie's) share. All the assets, however, were vested in him (Mr. Parker), a citizen and resident of New Jersey. When the trust conveyance was made, what Mr. Marie held was an undivided interest in a New Jersey trust estate, an estate vested in a New Jersey trustee by order of the court of chancery of New Jersey, in which court the trustee had yet to account. Mr. Marie, at the time of the execution of the trust agreement, resided in the State of New York. Subsequently, some few years later, I think, he became a resident of the State of Pennsylvania for a time. Still later, in the year 1904, he again became a resident of the State of New York, where he now resides.

A good deal has been said in this case about the *situs* of the estate which Mr. Parker holds with reference to the law applicable to it. Counsel for complainant insists that the validity of the trust is to be determined by the law of the State of New York. Counsel for the trustee argues that the law of Pennsylvania controls. There seems to me to be obvious and forcible arguments in favor of the proposition that the law of New Jersey determines the validity of this trust—that when the trust was created it was created under New Jersey law, and that subsequent changes of the domicile of the beneficiary could not make any foreign law in any way applicable.

I think, however, that whether the law of New Jersey or the law of New York or the law of Pennsylvania is to be applied

to this case, the result will be the same, and, therefore, the consideration and decision of what is perhaps a difficult question may be avoided.

The trust under investigation is set forth and declared in the agreement above mentioned in the following language:

"In trust, nevertheless, in the discretion of the party of the second part as trustee, as to the time, parcels, terms and conditions, to lease, sell, convey in fee-simple, manage, control, protect, repair and improve said property and premises, to invest any money, and collect and change investments, and generally to have full power of management, investment and disposition of said property and premises and their proceeds, and upon the further trust to pay to said John B. Marie the sum of seventy-five hundred dollars from and out of the said trust property within six months from the date hereof, and also to pay out of the same to said John B. Marie, from the date hereof during his life, the sum of two hundred dollars in each and every calendar month, which payments, monthly, the said John B. Marie shall not have power to anticipate or assign, and shall be for his support and free from all claims of creditors; and, on the further trust on the death of the said John B. Marie, to pay and distribute the trust property and premises, or the balance thereof, as said John B. Marie may, by his last will and testament, direct and appoint, free of all claims of creditors, and, failing such appointment, then upon the further trust to pay to Florence W. Marie, if she survive him, out of the said balance of said trust the sum of two hundred dollars monthly, free of anticipation, assignment and creditors as aforesaid, and on the death of the said John B. Marie and Florence W. Marie, to pay and distribute the whole balance, if any, of the trust property among the children, if any, of said John B. Marie, and such persons as legally represent them, if any of said children be then dead, and in case there be then no such children or legal representatives, then to pay and distribute said balance equally among the next of kin in equal degrees of said John B. Marie, and such persons who represent them, provided that no representation shall be admitted among collaterals after brothers' and sisters' children. And upon the further trust in the discretion of the said trustee to apply part of the trust fund in the purchase of a homestead to be held by the said trustee for the use of the said John B. Marie and his family, in which case ten per cent. of the cost of said homestead shall be charged annually upon and deducted from said monthly payments, and full power is reserved to said trustee in his discretion to sell such homestead and buy another or others from time to time in the stead thereof. And upon the further trust and with full power to the said trustee from time to time by his deed to associate with himself a new trustee or trustees and to convey the trust property to be holden by himself and such new trustee in joint tenancy, with the same estate, powers, trusts and duties as if said premises had been hereby conveyed to him and said new trustee, including the like power of associating new trustees."

For some time prior to the execution of the trust agreement of December 11th, 1888, Mr. Marie had been, to a certain extent, addicted to habits of intemperance, and had shown a tendency to squander his estate. According to the terms of the original trust the assets above mentioned held by Mr. Parker as trustee under appointment of this court, had, by reason of the death of the life tenant who took the entire income, become distributable among a class, of which Mr. Marie was one. The interest of Mr. Marie was vested, and the duty of the trustee was simply to account and pay over to Mr. Marie the share to which he was entitled, and about which there was no dispute. Mr. Marie's estate was, therefore, although still vested in the trustee, practically under his control, and manifestly was subject to the claims of his creditors. *Hardenburgh* v. *Blair, 30 N. J. Eq.* (*3 Stew.*) *645; Wells* v. *Ely, 11 N. J. Eq.* (*3 Stock.*) *172.*

1. The actual object which Mr. Marie had in view in creating this trust is not, it seems to me, a matter of doubt. He wanted to go into a stage-coach business in the Adirondacks, in which he thought he would make money, but concerning which Mr. Parker had doubts. The business, in fact, proved to be a failure, although it does not appear that when Mr. Marie closed it up there was much, if any, loss. Mr. Parker's apprehensions in regard to this business were proved by the result to be well founded. The relations between Mr. Parker, on the one hand, and Mr. and Mrs. Marie, on the other, though springing out of business transactions alone, soon became friendly, and Mr. Parker took a great personal interest in this young couple and all their affairs. No doubt Mr. Parker, out of purely disinterested motives, desired to do all that he could to prevent Mr. Marie from squandering his property, and thereby bringing hardship and suffering upon himself and the young woman whom he had recently married. The evident purpose of Mr. Marie in creating this trust and of Mr. Parker in accepting it, was to place Mr. Marie's entire estate, after he had taken out the $7,500 which he required for the establishment of his stage-coach business, where it would be secure from all the dangers

which would beset it if it were liable to be affected by his extravagance and improvidence.

It is urged in defence of the trust that the purpose was not to place property where future creditors could not reach it, but to so place property that there would be no future creditors. In my opinion, the purpose of Mr. Marie in making this settlement cannot possibly be limited to such a narrow object. Men are presumed to contemplate and intend the natural consequences of their acts. They must be presumed to contemplate future conditions which their own experience, if not the experience of others, enables them to perceive as liable to occur. How can we believe that an intelligent man, fond of spending money and addicted to contracting debts, will look forward with reasonable certainty to a long life in the future in which he will create no debts which he will not be able, ready and willing to pay, because he has placed his entire estate where it cannot constitute the basis of any credit which otherwise he would enjoy. It is a matter of common knowledge and experience that men, disposed to contract debts and squander money, and go into imprudent ventures to a certain extent, succeed in obtaining credit although they may not be financially responsible to the extent of a dollar. When a spendthrift puts his estate in the hands of a trustee for his (the spendthrift's) benefit, it is true that he may in good faith contemplate that the device will destroy his credit to such an extent that it will be difficult for him in the future to contract any debts, but in my opinion, in view of the facts of human nature open to the observation of all mankind, it must be presumed that the spendthrift looks forward to the probability that he will at some time in the future contract some debt or debts for the payment of which he may not have sufficient ready money and therefore he must be presumed to have in view the protection of his estate from the attacks of any such possible future creditors. The whole purpose of such a trust is necessarily twofold, viz., to protect the estate of the spendthrift against any future creditors by creating conditions under which (1) it will be difficult for the spendthrift to contract any debts, and under which (2) any future debts which, nevertheless, may be contracted, will be uncollectible out of the spendthrift's estate.

If the view above stated requires some modification I think it is clear that this spendthrift trust was created by Mr. Marie when he was distinctly contemplating the possible creation of debts in the future which he intended to render uncollectible out of the trust estate. In other words, the settlor was putting property where future creditors could not reach it. This purpose is distinctly disclosed as to the whole estate which would remain after Mr. Marie should receive the first payment of $7,500 in the provision which was inserted in the trust agreement to the effect that the stipend of $200 a month which Mr. Marie was to receive during his lifetime was to be "for his support and free from all claims of creditors." How can it be said that this trust was created with the *bona fide* expectation that the effect of it would be to prevent the existence of future creditors when future creditors are distinctly contemplated as possible, and the express purpose is declared that in case there shall be such future creditors they shall have no claims upon the spendthrift's monthly stipend.

The provision that in case Mrs. Marie should survive her husband and he should make no appointment by will, the monthly stipend payable to her should be "free of anticipation, assignment and creditors as aforesaid," may be referred to as indicating how distinctly future creditors were in the minds of the settlor and his counsel when the terms of this trust were defined even if it be conceded that the creditors referred to in this clause were creditors of Mrs. Marie and not creditors of her husband. However this may be, it would seem that the further provision that the trustee should, upon Mr. Marie's death, distribute any balance of the trust estate then remaining as he (Marie) might by will direct and appoint, "free of all claims of creditors," cannot be construed as relating to the creditors of the appointees but must be understood as relating to the creditors of Mr. Marie. The scheme of the trust is perfectly clear. As long as Mr. Marie lived and the trust estate remained unexhausted he (Marie) was to have $200 a month for his support, and this monthly stipend was to be beyond the reach of his creditors. When Mr. Marie died whatever residue of the trust estate might then be left was to pass under Mr. Marie's will to appointees whom he should see fit to select, and these appointees were to take free from all claims

of Mr. Marie's creditors. Thus the entire estate would be enjoyed by Mr. Marie in the manner and to the extent defined by him during his lifetime, and upon his death what was left would be disposed of by his testamentary appointment, while all debts which Mr. Marie might contract were expressly barred from satisfaction out of any part of the trust estate. But if it may be supposed that Mr. Marie and his able and learned counsel intended to provide for the distribution to the appointees of shares which should be beyond the reach of the creditors of the appointees, if it may be argued that such was the actual intention of the instrument however difficult or impossible of being carried out, it seems to me that the plainly expressed intention that Mr. Marie's monthly stipend should be "for his support and free from all claims of creditors" is of itself sufficient to fix the character of the whole instrument. There is great significance, I think, in the fact that the monthly installments were payable out of both principal and interest. The $7,500 manifestly had to be paid largely out of the principal. Half the estate might be lost by lawful but unfortunate investments; the $200 per month would still be payable to the exhaustion of the estate. The case would not have been legally different if the agreement had provided that Mr. Marie was to receive $1,000 per month until the estate should be exhausted, and that such installments should be free from the claims of his future creditors.

It is, I think, unnecessary to discuss the testimony of Mr. Marie and Mr. Parker in regard to the actual objects and purposes of the trust deed. This testimony strongly supports the conclusion which has been reached from the examination of the express provisions of the trust agreement. Mr. Parker's testimony, which is both lucid and frank, points directly to this conclusion.

The result is that this conveyance of December 11th, 1888, must be held void as against all present and future creditors of Mr. Marie, because it was made by him with intent to place his property where his creditors could not reach it. In my opinion this conclusion may be based upon the general proposition that a trust like this, embracing substantially the settlor's entire estate, the object of which is to yield to the settlor

monthly installments for his support during his lifetime out of the entire *corpus* of the estate, and to effect a disposition of any residue which may remain at the settlor's death as he may appoint by will, must be presumed to have been intended to accomplish the defeat of such future creditors of the settlor as might come into existence after the creation of the trust. It seems to me that it is not necessary for the establishment of this presumption that in the instrument creating such a trust, the possibility of future creditors of the settlor should be expressly recognized, or that an intention to bar such possible future creditors should be expressly declared.

It hardly seems to be necessary at this point of the inquiry to discuss the rights or the possibilities of the persons who will take in the event of the settlor's refraining from making an appointment by his will. These persons are mere donees. As to them the conveyance is purely voluntary, and hence void if the intention of the conveyance was to delay, hinder or defraud the donor's future creditors. The fact is that the entire estate in a case like this is either enjoyed—used up by the settlor in his lifetime, or passes to the beneficiaries whom he names in his will. The situation, as most authorities, I think, point out, is one in which a man endeavors to place his estate where it will be his to enjoy, his to consume and his to distribute at his death, but not his for the purpose of being answerable to such debts as he may succeed in contracting.

Whether the presumption above mentioned is rebuttable—whether special circumstances may overthrow such presumption, I do not propose to consider. It certainly would be difficult to overcome such a presumption when the instrument, as in this case, expressly undertakes to bar future creditors. There is no evidence in this case that I can discover which can possibly be held to overcome the presumption which arises upon the face of this instrument.

If casting all questions of presumption aside we must infer the actual intent of the settlor in a case like this from all the circumstances of the case, including the express declaration of the trust agreement, I think it is very clear, from the evidence in this case, that the actual purpose of this spendthrift's

trust is to put property where future creditors of the settlor would be unable to reach it in satisfaction of their debts. The evidence, I think, excludes the theory that Mr. Marie went into this scheme intending in good faith merely to create conditions for his future life, under which it would be impossible for him to contract debts. His express provision in the trust deed protecting, or attempting to protect, his stipend against creditors of itself makes such a theory untenable.

2. Apart from the question of fraud, in my opinion the conveyance of December 11th, 1888, so far as it transferred the personalty, is void as against Mr. Marie's creditors under the express provision of the statute which makes conveyances of "goods or things in action made in trust for the use of the person making the same" void as against his creditors. *2 Gen. Stat. p. 1604 § 11.* I shall not discuss this point at length, although it is well worthy of the elaborate treatment which it has received in the argument of counsel. The only question as to the applicability of the statute above cited to the present case arises in respect of the remainder over in default of the exercise of the power of appointment by Mr. Marie. While we have no direct authority on this subject in New Jersey, the great weight of authority elsewhere, and also sound reasoning and common sense, in my opinion, support the view that a conveyance like this of practically all the settlor's property must be deemed a conveyance, "for the use of the person making the same." The remainder over in default of appointment does not, in my opinion, alter the plain character of such a settlement. The whole estate is made subject to the "use" of the person creating the trust. He regulates at the start the amount of the installments which are to be paid to him from time to time, and the frequency with which such installments are to be paid. Whether he provides for the payment of the income only, or, as in this case, provides for arbitrary installments payable out of principal as well as income, all that he gets is plainly subjected to his use. All that he leaves he may, if he sees fit, dispose of by his will precisely as if his conveyance in trust had never been made. The mere fact that after the making of the trust he cannot immediately subject the entire estate to his use does not, in my opinion, affect the char-

acter of the conveyance; it still remains true that either by payments of installments to him, the settlor, from time to time, or by a distribution in accordance with his appointment after his death, the entire estate is subjected to his use. All that he has done by stripping himself of his power over his estate amounts to a mere regulation made by himself of the manner in which in the future he will use his estate.

Of course, the above statements ignore the effect of the possible remainder over. I accept that doctrine which seems to me to be sound, that the gift over, which can only become operative in case the settlor does not use up the entire estate in the installments payable to him during his lifetime, and then refrains from using and enjoying the balance by appropriating such balance to appointees named in his will, has no effect in the way of altering the character of the settlement as one "in trust for the use of the person making the same."

3. The judgment for $14,129.43, recovered by the complainant Marie Gerardin, is conceded to represent an indebtedness from Mr. Marie to his wife which was assigned for purposes of collection to Mrs. Gerardin. It has been urged that, even if other creditors may successfully attack the trust deed, Mrs. Marie is not in a position to make such attack. It does not seem to me to be necessary to examine the various transactions relating to this trust estate in which Mrs. Marie was concerned during the seventeen years which followed its execution. Three instruments executed during this period have been offered in evidence. The first of these, dated December 13th, 1899, was not executed by Mrs. Marie. The last of these instruments, dated April 26th, 1905, was executed by Mr. and Mrs. Marie, and by its terms Mr. Marie acknowledges his indebtedness to his wife and admits that he has "no defence to the same either in law or in equity." All these transactions of Mrs. Marie, when invoked to place her at a disadvantage as compared with other creditors of her husband, must, in my judgment, be regarded in the light of the confidential relation which existed between Mrs. Marie and her husband. Mr. Marie, having to a large extent destroyed his credit by this trust deed among persons who would deal with him at arms' length, succeeded in borrowing large sums of money from

his wife. He owed her, according to his statement, about $2,000 when the trust deed was executed. This indebtedness grew through a series of years until it reached the very substantial proportions indicated by Mrs. Gerardin's judgment. The indebtedness amounted to about $9,000 when the instrument, dated December 13th, 1899, was executed by Mr. Marie and Mr. Parker as trustee. Where a husband has made a conveyance which in the eye of the law is void as to his future creditors, and then borrows large sums of money from his wife, any claim of ratification or waiver which he or his trustee may put forth to defeat the satisfaction of the wife's indebtedness out of the transferred property must be clearly established. Where he has procured the participation of his wife in the transactions which he sets up as amounting to such ratification or waiver, I think that he must show affirmatively that there was no abuse of the confidential relation on his part, and that as between himself and his wife his conduct in inducing or permitting her to waive her rights or alter her situation was equitable and just. It is quite plain, it seems to me, that this young woman, inexperienced in business, did not understand at any time that what her husband and debtor was doing through these various instruments affecting the trust estate, had the effect to leave that estate exposed to the claims of all other creditors while she alone was left out in the cold.

I cannot, however, give this subject the minute and elaborate discussion which any exhaustive treatment of it would involve. At many points in such a discussion the distinction would have to be borne in mind between the status of the trust deed as fraudulent, and its status as a conveyance of personal property "in trust for the use of the person making the same." In view of the reasonable limitations upon the extent of this opinion, it will, I think, be sufficient to state the conclusion that there is nothing in my judgment in the evidence in this case which warrants any discrimination against the indebtedness of Mrs. Marie, as compared with any indebtedness due from Mr. Marie to a stranger. The point must be kept in view that we are now dealing with the status of this indebtedness of Mrs. Marie as against her husband, as against the instruments or transactions by which he or his trustee may claim that she has ratified

or waived all objection to a conveyance of her husband's property which originally prior to such ratification or waiver, was void as to her. As far as the trustee himself may have changed his position on the strength of Mrs. Marie's conduct, the situation is entirely different. If the trustee in equity has a right to protection against Mrs. Marie's claim by reason of anything that Mrs. Marie has consented to or done, such protection can be provided for upon settlement of the decree. I do not understand that the payment of the two judgments held by the complainants respectively out of the trust estate in Mr. Parker's hands, will exhaust that estate or expose the trustee to any loss.

4. Owing to the lack of direct authorities in New Jersey controlling the questions which have been discussed, and the fact that decisions in other states must be examined in the light of the local statutes, I have not so far undertaken the citation and discussion of any authorities. The following authorities may be referred to as sustaining or tending to sustain the conclusions above set forth: *Ghormley* v. *Smith, 139 Pa. St. 584; 21 Atl. Rep. 135 (1891)* ; *Mackason's Appeal, 42 Pa. St. 330; Warner* v. *Rice, 66 Md. 436; 8 Atl. Rep. 84 (1887)* ; *Brown* v. *McGill, 87 Md. 166; 39 Atl. Rep. 613 (1898)* ; *Scott* v. *Kean, 87 Md. 709; 40 Atl. Rep. 1070 (1898)* ; *Pacific Bank* v. *Windram, 133 Mass. 175 (1882)* ; *Jackson* v. *Von Zedlitz, 136 Mass. 342 (1884)* ; *Young* v. *Heermans, 66 N. Y. 374 (1876)* ; *Schenck* v. *Barnes, 156 N. Y. 316 (1898)* ; *In re Pearson, L. R. 3 Ch. Div. 807 (1876)* ; *26 Am. & Eng. Encycl. L. (2d ed.) 147,* ¶¶ *7, 8,* and cases cited in notes.

It does not seem to me to be pertinent to any present inquiry to cite the numerous and conflicting decisions which deal with spendthrift trusts where the trust estate has not belonged to the beneficiary, where the trust has been created by a third party.

A decree will be advised providing for the satisfaction of the respective judgments of the complainants out of the trust estate. All questions in regard to costs or counsel fees will be disposed of upon settlement of the decree.