204 So.2d 856 (1967)
DEPOSIT GUARANTY NATIONAL BANK, Trustee, et al.
v.
WALTER E. HELLER & COMPANY.
No. 44610.
Supreme Court of Mississippi.
December 11, 1967.
Henley, Jones & Henley, Jackson, for appellant.
Thompson, Alexander & Crews, Jackson, for appellee.
JONES, Justice:
This case comes from the Chancery Court of the First Judicial District of Hinds County, Mississippi, where the court held that a trust agreement was subject to the claims of appellee, a creditor of the grantor. The suit was to collect a judgment that appellee had recovered against the administrator of the estate of the grantor of the trust, Tryon B. Allen. It was against the Deposit Guaranty National Bank, as Trustee under the trust agreement, Arthur D. Allen, III, and his guardian. From a decree subjecting the property involved in the trust agreement to the payment of appellee's judgment, this appeal is brought. We affirm.
Tryon B. Allen was a native of Kentucky. As a member of a wealthy family, he had inherited considerable money from his parents. After returning from service in World War II, during which he was accidentally injured, he engaged in several business ventures which were more or less unsatisfactory. Sometime in 1956 he was adjudged mentally incompetent by the courts of Kentucky, and a Kentucky trust company was appointed as his committee (guardian). *857 It took charge of his property applying the same as far as necessary to the payment of his debts, amounting to more than $200,000. From 1956 until the early part of 1960 Tryon B. Allen resided with his sister in the family home near Louisville. During this period of time it was necessary for him to be placed in the psychiatric ward of an infirmary a number of times because of periodic attacks of alcoholism, and he was wholly unable to resume management of his business affairs. It is also said that he suffered from an organic brain disease which required psychiatric care.
Tryon B. Allen had a good friend who lived on a plantation near Edwards, Mississippi. His condition apparently having improved, Mr. Allen came to live at Edwards to be with his friend. In the early part of 1961, he, together with his friend Sam Tupper, called at the office of one of the leading, most highly respected, able, and competent lawyers of the State of Mississippi, who was employed to look into the matter of having Mr. Allen declared mentally competent and his property restored to him. This matter was investigated and the petition for restoration was filed in the courts of Kentucky. There an order declaring him restored was entered; hence he is deemed mentally competent.
Prior to such restoration proceedings, there was an agreement that if Mr. Allen were restored a trust agreement would be made placing all of his property in trust, with the exception of the $40,000 proceeds of the sale of his interest in the Kentucky home. This trust agreement was made. Under this trust agreement Deposit Guaranty Bank & Trust Company of Jackson, Mississippi (now Deposit Guaranty National Bank), was named Trustee; and Tryon B. Allen, as grantor, conveyed to the Trustee a large amount of property which the Trustee agreed to hold, administer, and distribute in accordance with the terms and provisions of the trust agreement. One of the provisions was that the income from the trust estate should be paid to the grantor, Tryon B. Allen, in monthly or convenient installments during his lifetime. It was then provided that upon the death of the grantor the trust should terminate and the Trustee should distribute the remaining trust property to the grantor's nephew, Arthur D. Allen, III, a minor.
The portions of the trust agreement which are pertinent to this litigation are in Articles I(a), I(b), II, V, and IX, which are set out below:
ARTICLE I
* * *
(a) The net income from the trust estate shall be paid to the Grantor in monthly or other convenient installments during his lifetime.
(b) Upon the death of the Grantor the trust created herein shall terminate and the Trustee shall distribute the corpus in fee simple to Grantor's nephew, Arthur D. Allen. * * *
* * * * * *
ARTICLE II
The Trustee, upon written request by the Grantor and upon the written approval of James P. Coleman, of Ackerman, Mississippi, who is designated herein as Advisor to the Trustee, shall withdraw and pay to the Grantor from the principal of the trust estate an amount not to exceed in any one calendar year twenty-five (25%) per cent of the fair market value of the trust estate. * * *
Should the Grantor for any cause, medically or accidentally, be rendered unconscious or otherwise incapable of requesting the expenditure of funds from the corpus of the trust, then, and solely in that event, the Trustee upon the written request of the advisor or any substituted advisor may spend any part of the corpus of the trust or the income thereof reasonably necessary for the support, maintenance, hospitalization, medical *858 care and/or medical treatment of the Grantor. The necessity for such expenditure shall be certified in writing under oath by two regularly licensed and practicing physicians and the validity of such a certificate shall not thereafter be subject to question.
* * * * * *
ARTICLE V
It is agreed between the parties hereto that the Grantor from and after the execution of this instrument shall not execute any Notes or other written evidences of indebtedness. A duly executed copy of this Trust Agreement shall be recorded in the office of the Chancery Clerk of Hinds County, Mississippi, and under the recordation statutes of the State of Mississippi same shall constitute notice to the world that neither the corpus of the trust nor any part of the income therefrom shall be liable for or subject to any such note or other written evidence of indebtedness, or judgment thereon incurred after the date of the recordation hereof.
The Trustee assumes no obligation to superintend or police the Grantor for the enforcement of this covenant as against the Grantor himself, but will enforce same to the full extent of the law as against a creditor who seeks to enforce any note, evidence of indebtedness, or judgment thereon, who shall have acted in violation of this article.
* * * * * *
ARTICLE IX
The trust shall not be subject to attachment or garnishment or execution by reason of any debt or other obligation of Grantor.
Article I provided that the trustee should be required to make a full accounting to the grantor at least annually on the first day of January of each and every calendar year, beginning with January 1, 1963.
The trust agreement was executed on December 27, 1961. Thereafter Tryon B. Allen, hereinafter referred to as the grantor, in violation of that part of the trust agreement prohibiting him from signing notes and incurring debts, in 1963 and 1964 became engaged in the business of operating automatic coin laundries and coin-operated car washes. In connection with these operations in several towns in Mississippi, he purchased a quantity of automatic laundry equipment from the manufacturer, Ald, Inc., under conditional sales contracts. Installment promissory notes were given as evidence of said indebtedness. The promissory notes in question were transferred without recourse for a valuable consideration to the appellee in the normal and customary operation of its business affairs. The judgment here involved was upon said notes.
The said grantor executed a credit application to Ald, Inc., in which he said: "For the purpose of obtaining credit from you, I/We, hereby make the following statement. * * *" He then completed and signed four pages of financial information about himself. This sheet disclosed his net worth as $585,551.69. Among his assets was listed "Trust Fund (Deposit Guaranty Bank & Trust Company), $165,000 (have right to withdraw $25,000 per year)." There was attached also a list of certain stocks, notes, or bonds totalling $201,878, some of which the record shows were included in the trust agreement.
Before the notes were assigned to appellee, the financial statement was forwarded to it. While the trust agreement was recorded in the First Judicial District of Hinds County, Mississippi, the schedule of assets included in the trust, which was referred to as "Exhibit A" thereto, was not of record.
On June 3, 1963, appellee wrote the Deposit Guaranty Bank stating that the grantor had applied for credit in the approximate amount of $16,335.36, and requested the bank to check the inquiry form below on the letter, which the bank did, advising that *859 "reasonable credit accommodation would be provided for in a satisfactory manner." There was also enclosed to the bank a copy of the financial statement aforementioned, which showed that the said trust agreement with the right to withdraw $25,000 per year was listed under a paragraph providing "other investments (in the name of Tryon B. Allen)." Upon the strength of this information credit was extended.
On the grantor's failure to satisfy this indebtedness, appellee filed suit. Prior to termination of the suit, the grantor died. The suit was revived against his administrator and judgment obtained. It is upon this judgment that this suit was instituted seeking to subject the assets of the trust to the payment of appellee's claim.
May it be said in the outset that the chancellor specifically held the lawyers preparing said agreement had no intention of defrauding anyone. The chancellor's opinion was that the Mississippi attorney and the Kentucky attorneys were more concerned with the recurrence of the grantor's drinking problem than anything else, and they specifically did not have any intent to hinder or delay any creditors. By tying up the grantor's property, it was thought that people would not deal with him. The attorneys undertook to eliminate further creditors by having the grantor pledge in the agreement not to incur future debts. It is obvious, as the chancellor held, the said instrument  on its face and according to the testimony of the lawyers preparing same  was executed in order to prevent future debts from depleting the grantor's estate. The chancellor found it to be a spendthrift trust, and voidable as to creditors. He held the trust to be void as against public policy, since the grantor had the right to invade the corpus of the trust in accordance with the provisions of it and to receive the full amount of it.
Of course, as between the parties the trust is valid, and no question would be raised in the absence of creditors. This instrument was clearly intended, as we view it to conserve the estate and prevent the invasion of the corpus by creditors, existing or future.
As hereinbefore shown, Article II of the trust provided that the grantor might withdraw twenty-five per cent per year on the approval of the advisor to the Trustee. The agreement was made December 27, 1961, and the grantor died August 24, 1965. During this time he could have withdrawn the entire corpus if we construe the "twenty-five (25%) per cent" in said Article II as meaning twenty-five per cent of the original corpus. In addition, the grantor regarded and treated as his own the property of said trust, as shown by the credit information given to secure the credit here extended and upon which appellee acted.
There was also the provision in Article II as quoted hereinbefore that in the event of the incapacity of the grantor the estate might be withdrawn for use of the grantor at the request of the advisor at a greater rate than twenty-five per cent a year if required for his necessities.
It is obvious from the wording of the agreement in Articles V and IX and the testimony of those preparing it that a spendthrift trust was intended with the right of the grantor himself to invade the corpus. A spendthrift trust for the benefit of the grantor is invalid, both as to past and future creditors, even though there is a provision for a contingent remainder in a third person. 89 C.J.S. Trusts § 26 (1955).
In Bogert, Trusts and Trustees section 223 (2 ed. 1965), it is said that if a settlor creates a trust for his own benefit and inserts a spendthrift clause, it is void as far as then existing or future creditors are concerned, and they may reach his interest under the trust. Many cases uphold this doctrine. In this same section, it is interesting to note this statement:
Both existing and future creditors may be misled into believing that their debtor's *860 financial situation is sound, because he continues to enjoy the fruits of his property and perhaps is in actual possession of it, although it has been conveyed by a secret trust instrument to be held for the debtor. (Bogert, supra, at 667).
While this trust was not secret in that it was of record, except for the list of assets included in it, the grantor himself represented to appellee that the trust agreement was an investment in his name and that he had a right to draw $25,000 per year therefrom. Furthermore, when the grantor gave the Trustee as a reference and appellee wrote the Trustee, sending a copy of the statement furnished, the Trustee did not disclose to the creditor anything indicating that the grantor was mistaken in his representations.
The rule is stated in section 156 of 2 Scott, Trusts (2 ed. 1956) as follows:
Even in jurisdictions in which spendthrift trusts are permitted, the settlor cannot create a spendthrift trust for his own benefit. If the owner of property transfers it in trust to pay the income to himself for life or for a period of years, and provides that his interest under the trust shall not be assignable by him and that his creditors shall not be permitted to reach it, nevertheless he can effectively assign his interest and his creditors can reach it. It is immaterial that in creating the trust the settlor did not intend to defraud his creditors. It is immaterial that he was solvent at the time of the creation of the trust. It is against public policy to permit a man to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it.

Where the only interest which the settlor has created for himself under the trust is a right to the income for life or for some other period, it is this interest alone which his creditors can reach, unless the creation of the trust was a disposition in fraud of his creditors. Where the settlor has an interest in the principal, this interest can be reached by his creditors. This is true, for example, where a trust is created under which the income is payable to the settlor for life and on his death to his estate, or where the income is payable to him for a term of years at the expiration of which the principal is payable to him or to his estate.
The policy underlying these decisions seems clear. The owner of property can properly create a trust under which a third person takes a beneficial interest, and the creditors of the settlor cannot reach this interest unless the creation of the trust was a fraudulent conveyance. To the extent to which the settlor himself takes an interest under the trust, however, that interest is subject to the claims of his creditors even though the creation of the trust was not a fraudulent conveyance. It is against public policy to permit the owner of property to create for his own benefit an interest in that property which cannot be reached by his creditors. (emphasis added)
In I Restatement of Trusts 2d section 156 (1959) it is said:
§ 156. Where the Settlor is a Beneficiary.
(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.
(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit. (emphasis added)
Comment:
a. Intention to defraud creditors not required. The rules stated in this Section *861 are applicable although the transfer is not a fraudulent conveyance. The interest of the settlor-beneficiary can be reached by subsequent creditors as well as by those who were creditors at the time of the creation of the trust, and it is immaterial that the settlor-beneficiary had no intention to defraud his creditors.
* * *
In further reference to whether the trust was intended to protect against his future creditors, in addition to what has heretofore been said, we call attention to the last part of Article V of the agreement. The first part of that article is where the grantor agreed not to execute any notes or other written evidences of indebtedness. The last clause in said article provided that the Trustee assumed no obligation to see that the grantor carried out that agreement, but did promise, agree, and obligate itself to
* * * enforce same to the full extent of the law as against a creditor who seeks to enforce any note, evidence of indebtedness or judgment thereon. * *
As heretofore shown, the Trustee was advised by the complainant that credit had been requested by Tryon B. Allen to the extent of something more than $16,000. The bank assuredly knew that when credit to this extent was advanced, the creditor would require a written note or written contract of some sort. Inadvertently, the bank did not advise complainant that by the trust agreement the grantor was prohibited from executing notes or written obligations and that under the trust agreement the bank, as Trustee, would be required to resist any efforts of the complainant to reach the funds in the trust. The bank, as Trustee, was representing the trust  that is, the interests of both the remainderman (Arthur D. Allen, III) and the grantor, who had represented that the trust corpus was his.
As hereinbefore shown, grantor had the right with the approval of the named advisor to withdraw during any one year at least twenty-five per cent of the corpus of the estate. While, as a matter of fact, he did not withdraw it, he had the right to do so; and if he had the right to reach the funds or securities, we are of the opinion that his creditors had the right also to reach them. A debtor can not have funds available to him (except funds exempt by law, not here involved) and at the same time bar his creditors from reaching them. Of course, the withdrawals mentioned had to be with the approval of the advisor. This does not save the situation; for if there were no advisor it would have to be with the approval of the Trustee. In either event, if a man were setting up a trust of his own property and were naming the trustee and the advisor as in this case, it would be easy for him to select some person who would approve any demand for withdrawal that he made.
The fact that he did not withdraw the money in our opinion makes no difference. As stated in Ward v. Marie, 73 N.J. Eq. 510, 520, 68 A. 1084, 1089 (1907):
The mere fact that after the making of the trust he cannot immediately subject the entire estate to his use does not, in my opinion, affect the character of the conveyance. It still remains true that either by payments of installments to him, the settlor, from time to time, or by a distribution in accordance with his appointment after his death, the entire estate is subject to his use. All that he has done by stripping himself of his power over his estate amounts to a mere regulation made by himself of the manner in which in the future he will use his estate. Of course the above statements ignore the effect of the possible remainder over. I accept that doctrine, which seems to me to be sound, that the gift over, which can only become operative in case the settlor does not use up the entire estate in the installments payable to him during his lifetime, and then refrains from using and enjoying the balance by appropriating such balance to *862 appointees named in his will, has no effect in the way of altering the character of the settlement as one "in trust for the use of the person making the same."
As said by the Missouri Court in Jamison v. Mississippi Valley Trust Co., 207 S.W. 788, 789 (Mo. 1918):
The creditors of the beneficiary of a trust have no right to complain of a gift to the beneficiary which restricts the use in such manner that they cannot reach it. The creditors of the donor only are concerned. This is the foundation of the right to create a spendthrift trust. But it is different when the debtor himself attempts to create a trust in his own favor in his own property. He cannot settle property in that manner and provide conditions against its being subject to the payment of his own debts, even though he provides for a contingent remainder in third persons. Mackason's Appeal, 42 Pa. 330, loc. cit. 337-339, 82 Am.Dec. 517; Nolan v. Nolan, 218 Pa. 135, loc. cit. 140, 67 A. 52, 12 L.R.A. (N.S.) 369; Citizens' Nat. Bank v. Watkins, 126 Tenn. 453, 150 S.W. 96; Sargent et al. v. Burdett, 96 Ga. 111, 22 S.E. 667; Ward v. Marie, 73 N.J. Eq. 510, loc. cit. 520, 68 A. 1084. (emphasis added)
Appellant relies heavily upon the case of Greenwich Trust Company v. Tyson, 129 Conn. 211, 27 A.2d 166 (1942), in which a trust was created for the benefit of the grantor with remainder over. The court held that on the death of the grantor the rights of the remainderman became indefeasibly vested in the remainderman, and the trust property could not be reached by the grantor's creditors. Under the facts of this case, we cannot accept this view.
Bearing in mind that the settlor had the right to reach the principal at the rate of twenty-five per cent of the corpus per annum, but did not avail himself of it, does not, in our opinion, change the result. Ward v. Marie, supra. If it were so that the settlor could reach the funds, we think the creditors should be able to reach them; and that which the California court said in In Re Camm's Estate, 76 Cal. App.2d 104, 172 P.2d 547 (1946), is appropos, and at least in line with our sense of justice and right:
If this trust, as to the accrued and accumulated income to which the settlor was entitled before death could be upheld as against this creditor's claim, it would be possible for anyone to create a trust for his benefit, in which he retained the right to receive and use all income during his life, with remainder to another at the moment of death, free from claims of creditors, and then keep large credit accounts running and die leaving his debts unpaid, thus cheating his creditors. Equity will not permit this. Authorities relied upon by the objector fully support his position.
We reiterate that we do not believe any of the principals involved in the preparation of this agreement, including the Trustee, were bent upon any evil design or had any intention of defrauding anyone. We are convinced they all were acting in good faith in undertaking to prevent the grantor from acquiring any future creditors. The grantor himself violated the terms of the agreement and caused the litigation.
We are convinced that equity is on the side of the appellee. To hold that the remainderman (who was not an innocent purchaser for value, but more in the nature of a legatee or sole heir) could take this property under the circumstances herein free and clear of the rights of creditors strikes us as unjust and against all equity.
In our opinion the creditors had a claim against this trust before the death of the grantor. We cannot conceive that his death would bar their claim; and we hold that a claim of creditors against said property is not defeated merely by the death of the debtor. Since the trust agreement as stated is good between the parties, the minor remainderman will take subject to *863 the claim of appellee, and payment of such claim from the assets of the trust will be enforced. We therefore affirm the case.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY, and SMITH, JJ., concur.