386 So.2d 1112 (1980)
Mary Moore JOHNSON
v.
FIRST NATIONAL BANK OF JACKSON.
No. 52026.
Supreme Court of Mississippi.
August 13, 1980.
*1113 Moore, Simmons & Thompson, Frank T. Moore, Jr., Clifford C. Thompson, Jackson, for appellant.
Thompson, Alexander & Crews, Arlin C. Ruthven, Thomas R. Crews, Jackson, for appellee.
Before SUGG, BROOM and LEE, JJ.
BROOM, Justice, for the Court:
Terminability of a trust agreement is the chief issue of this case in which the appellant, Mary Moore Johnson (trustor) seeks termination. She sued the trustee, First National Bank of Jackson (FNB), in the Chancery Court of the First Judicial District of Hinds County for termination of the trust and now appeals from a decree adverse to her. We reverse.
Mary Moore Johnson and FNB entered into a trust agreement dated August 5, 1976, and styled "Irrevocable Trust Agreement." By the agreement, Moore assigned unto FNB most of her rights and interest derived from the estate of her deceased father, Lee White Johnson, M.D. In June of 1978, she sent to FNB a Revocation of Trust Agreement form. In this form, Johnson claimed that she was: the "settlor and sole beneficiary" of the trust; sui juris; suffering from no incapacity whatsoever; and desired to have all of the corpus of the trust returned to her control.
Johnson is 25 years old and has never been married. She attended college one year during which she attended three different colleges. Her collegiate studies included no courses in economics or related to handling or investing money or anything of that nature. Johnson has held various unskilled jobs, but none for a substantial length of time.
Her testimony was that she had entered into the trust agreement on the advice of her mother and a friend named Charlton Anderson, an FNB trust officer. She also had advice from Harold James, a CPA, who told her that he thought it would be a good thing. Further, she stated that she recognized the fact that at the time she had come into a large inheritance from her father's estate but lacked the ability to handle that kind of money. Now, her testimony is that she is more responsible, older, wiser, and able to handle her affairs.
During this time period, Johnson has become associated with the Church of Scientology in Florida to the extent that in the past three or four years she has donated it approximately $30,000. Ten thousand dollars of this money was borrowed from Johnson's grandmother which, at this time, has not been repaid.
There is no need to detail all of the transactions. Documentary evidence showed that during the approximately two years between the entering into the trust agreement and the filing of the revocation document, Johnson had made numerous demands to the trustee for money which would have had to come from the corpus of the trust. Some of the requests were *1114 granted and some were not. Evidence also showed that when Johnson did receive these sums, she may not have managed them with expertise.
At the close of the hearing, the chancellor entered an opinion favorable to FNB in which he noted that apparently Mississippi has not yet passed on the question of whether a supposedly irrevocable trust can be revoked at any time by the settlor who is the sole beneficiary of the trust. Johnson's bill was dismissed.
DID THE LOWER COURT ERR IN HOLDING THAT JOHNSON, EVEN THOUGH SERVING AS BOTH TRUSTOR AND SOLE BENEFICIARY OF THE WRITTEN INTER VIVOS IRREVOCABLE TRUST AGREEMENT, COULD NOT TERMINATE SUCH AN AGREEMENT?
The problem involves three main questions: (1) as sole beneficiary of the trust, may the settlor compel termination of the trust even though the trust was apparently established to be irrevocable; (2) if the settlor can compel the termination of the trust generally, are there any reasons for not following the general rule which permits termination; and (3) if the first two questions are answered affirmatively, is there a reason in the case at bar for now allowing the settlor to terminate this trust?
In response to the first question above, we have not found nor has any Mississippi case directly in point been cited. Deposit Guaranty National Bank v. Walter E. Heller & Co., 204 So.2d 856 (Miss. 1967) held that a spendthrift trust for the benefit of the grantor is void. Restatement (Second) of the Law of Trusts, § 339 (1959) states:
§ 339. Where Settlor is Sole Beneficiary. If the settlor is the sole beneficiary of a trust and is not under an incapacity, he can compel the termination of the trust, although the purposes of the trust have not been accomplished.
Also, G. Bogert, Trusts and Trustees, § 1004 (2d Ed. 1962) states:
If the trustee refuses the settlor's request and insists on continuing the trust administration, the court should and does order him to comply and thus to terminate the trust. It is true that this is not carrying out the intent which the settlor had when he created the trust and when he decided to have his property managed for him and to take its benefits indirectly. But that original intent ought to be of no importance when the settlor has changed his mind and formed new plans with regard to the enjoyment of his own property. His present intent should be carried out.
As further pointed out in Bogert, supra, no one has standing to object to the ending of the trust in cases of this type where the settlor demands that the trustee return the trust property to him and the trustee acquiesces. 4 A.W. Scott, The Law of Trusts, § 339 (3d Ed. 1967) is to the same effect.
Our conclusion is that we should, and now do, adopt the general rule that a settlor who is the sole beneficiary of a trust may have the trust revoked and set aside even though it was initially set up in the form of an irrevocable trust. There may arise future cases on different facts where we will recognize exceptions to the general rule.
Final question to be resolved here is whether or not the court's determination that it would not be in "the best interest of the complainant" to terminate the trust is controlling. The testimony and evidence showed that Johnson may not be an astute business woman, nor very proficient in managing her money. For example, after buying a Chevrolet Camaro in Mississippi for $5,400, she then went back to Florida and sold the car some two or three months later for $4,400. She made large contributions to the Church of Scientology, and the proof showed that she intended to spend a great deal more of the money for courses and training with that entity. However, she has never been adjudged to be a person of unsound mind, has never been under a guardianship, or under any other legal disability whatsoever.
It might very well be in her best interest to have someone look after her financial affairs, as is true of many individuals. *1115 Nevertheless, in our opinion, this Court and the other courts of this state should not attempt to shield persons from their own folly, where there is no showing of lack of mental capacity. One of the maxims of equity is that "when parties are disabled, equity will act for them." (Griffith, Mississippi Chancery Practice, § 45 [1950]). This maxim was never intended to mean that the courts of equity would attempt to guard a person from his own folly as determined by the standards of society. In the case before us, it was shown that trustor Johnson had given considerable money to the Church of Scientology, and intended to give it much more. While the chancellor carefully avoided stating this as a ground for his decision, we think it is fairly obvious that it played at least some part in his opinion. We do not imply that the chancellor related his ruling to the particular church to which the appellant donated her money, but rather that she donated such vast amounts over such a short period of time.
How a person who is not under a legal disability chooses to spend her money is not and should not be subject to review by courts. If she so chooses, and so long as she is under no legal disability, Johnson is perfectly free to donate everything she has to any entity including the Church of Scientology. As was stated by Mr. Justice Jackson, dissenting in United States of America v. Ballard, 322 U.S. 78, 94, 64 S.Ct. 882, 890, 88 L.Ed. 1148 (1944), "I doubt if the vigilance of the law is equal to making money stick by over-credulous people."
Further, Johnson may not create a spendthrift trust for herself in this case, i.e., she may not place this money in trust to remove it from the reach of her creditors. Deposit Guaranty National Bank v. Walter E. Heller & Co., supra. Even if this Court were to determine that it would not be "in the best interest" of Johnson to terminate or revoke this trust, she may in effect revoke it herself. For example, she may borrow money equal to the amount of the money of the corpus of the trust, donate this amount to the Church of Scientology, and her creditors would then be able to proceed against the corpus of the trust. Our view is that, unless Johnson is determined judicially to be of unsound mind (which has not been done) under the general rule stated above, she has the right to revoke and terminate this trust and dispose of the money.
It may be said of this case that FNB and the chancellor made a noble effort to protect the appellant from herself, but we are unwilling to say that they have a legal right to do so. The mere fact that a person has done or attempted to do something with her money which is considered foolish by society is not sufficient reason for an equity court to invoke its power.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH, and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.