BARBARA M. G. LYNN, CHIEF JUDGE
Before the Court is the Motion for Partial Summary Judgment (ECF No. 30), filed by the Special Receiver. For the following reasons, the Motion is DENIED.
I. Background
The Ticket Reserve, Inc. ("TTR") developed software to allow sports fans of particular teams to purchase options for tickets to major sporting events such as play-offs or final games so that, if their team was involved, the sports fans could buy tickets to that sporting event. (ECF No. 1 ¶ 7). In March of 2007, Defendant CBS
*456 Corporation paid $ 8,400,000 for 10,000,000 shares of TTR preferred stock. (Id. ¶ 9; ECF No. 13 at 4). On December 31, 2012, CBS sold the shares back to TTR for $ 1.5 million. (ECF No. 1 ¶ 12; ECF No. 13 at 5).
On May 24, 2016, the Securities and Exchange Commission filed a complaint against TTR, alleging, among other things, that TTR violated Section 17(a) of the Securities Act of 1933 and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. (See SEC v. Narayan et al. , 3:16-cv-01417-M, ECF No. 2). This Court appointed Michael Napoli as Receiver over TTR. (Id. at ECF No. 12). The Receiver was given the authority to "pursue and preserve all of [TTR's] claims" and "to institute such actions and legal proceedings for the benefit and on behalf of the Receivership Estate as the Receiver deems necessary or appropriate." (Id. at ECF No. 12 ¶¶ 5, 36).
On April 26, 2017, the Receiver filed this suit against CBS, seeking to recover the $ 1.5 million that TTR paid to CBS to repurchase its stock. On May 23, 2018, due to a potential conflict of interest resulting from the Receiver's move to a different law firm, the Court appointed Ferdose al-Taie as Special Receiver over this action. (ECF No. 43). The Special Receiver alleges that TTR's repurchase of TTR stock from CBS is invalid because TTR was insolvent when the redemption occurred. (See ECF No. 1). The Special Receiver asserts four counts: (1) a claim under Illinois common law to recover payment to a shareholder by an insolvent corporation; (2) a claim for money had and received; (3) a claim for unjust enrichment; and (4) claims under Sections 5(a)(1), 5(a)(2) and 6(a) of the Illinois Uniform Fraudulent Transfer Act, Chapter 740, Act 160 § 1 et seq. ("Fraudulent Transfer Act"). (Id. ¶¶ 38-71).
On April 20, 2018, the Special Receiver filed her Motion for Partial Summary Judgment, requesting that the Court grant summary judgment on the Special Receiver's claim under Illinois common law. The Court held a hearing on the Motion on August 27, 2018. (See ECF No. 60). At the hearing, the parties agreed to a bench trial. (Hearing Tr. at 7:11-13, 61:2-4) (The Special Receiver waived her "right to a jury trial on the issues of insolvency"). A bench trial is currently set for March 25, 2019 .
II. Legal Standard
Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is material "if its resolution could affect the outcome of the action." Weeks Marine, Inc. v. Fireman's Fund Ins. Co. , 340 F.3d 233, 235 (5th Cir. 2003). A factual dispute is " 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." Crowe v. Henry , 115 F.3d 294, 296 (5th Cir. 1997). The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party and to resolve all disputed factual controversies in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Boudreaux v. Swift Transp. Co., Inc. , 402 F.3d 536, 540 (5th Cir. 2005).
III. Analysis
A. Whether the Fraudulent Transfer Act Displaces the Special Receiver's Claim Under Illinois Common Law.
The Special Receiver brings a claim under the Illinois common law rule *457 that a shareholder of a corporation who sold his stock to the corporation while it was insolvent is liable to the injured creditors of the corporation. (ECF No. 31 ¶ 1); Clapp v. Peterson , 104 Ill. 26, 31 (Ill. 1882). Under Illinois law, "an entity is insolvent when it has 'stopped paying debts in the ordinary course of business' or is unable to pay its debts as they fall due." People ex rel. Shapo v. Agora Syndicate, Inc. , 323 Ill. App. 3d 543, 553, 257 Ill.Dec. 6, 752 N.E.2d 1186 (2001) (quoting Black's Law Dictionary 799 (7th ed. 1999) ).
After the Illinois Business Corporations Act ("BCA"), 805 ILCS 5/ et seq , was enacted, the Illinois Supreme Court clarified that the BCA did not repeal the common law rule imposing liability on shareholders. Reilly v. Segert , 31 Ill.2d 297, 298, 201 N.E.2d 444 (1964). The BCA imposes liability upon directors of a corporation who vote for or assent to a distribution to shareholders when, after the distribution, the corporation is insolvent. See 805 ILCS 5/9.10 ("No distribution [to shareholders] may be made if, after giving it effect: (1) the corporation would be insolvent...."); 805 ILCS 5/8.65 ("The directors of a corporation who vote for or assent to any distribution prohibited by Section 9.10 of this Act shall be jointly and severally liable to the corporation for the amount of such distribution."). The court in Reilly found that the BCA's rule imposing liability upon directors did not supersede or otherwise affect the common law rule imposing liability on selling shareholders. Reilly , 31 Ill.2d at 297-98, 201 N.E.2d 444. The Special Receiver argues that the common law rule applies here.
CBS responds that the Fraudulent Transfer Act displaces the common law rule described in Reilly . Section 5 of the Fraudulent Transfer Act states,
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
740 ILCS 160/5(a). To determine "actual intent," the following factors may be considered:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably *458 equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or become insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
Id. at 160/5(b)(1)-(11). Section 6 provides that,
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
Id. at 160/6(a).
The Fraudulent Transfer Act states that, "[u]nless displaced by the provisions of this Act, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." Id. at 160/11. CBS argues that the common law rule regarding shareholder liability "affirmatively interferes with the operation of the [Fraudulent Transfer Act] by impeding, in a given case and in this case, the determination of whether the [Fraudulent Transfer Act]'s requirements for declaring a transfer fraudulent have been met." (ECF No. 45 at 29).
The Court disagrees. The Illinois Supreme Court has stated that, "[c]ommon law rights and remedies remain in full force in [Illinois] unless expressly repealed by the legislature or modified by court decision." Rush Univ. Med. Ctr. v. Sessions , 2012 IL 112906, ¶ 16, 366 Ill.Dec. 245, 980 N.E.2d 45 (Ill. 2012). The intent of the legislature to repeal a common law right must be clear and cannot be "presumed from ambiguous or questionable language." Id. If not expressly abrogated, the repeal of a common law right can be implied only if there is an "irreconcilable repugnancy between the statute and the common law right such that both cannot be carried into effect." Id. ¶ 17 (internal quotation omitted). It is undisputed that the Fraudulent Transfer Act does not contain any provision that expressly repeals the common law claim against a shareholder to recover the amount paid by an insolvent company for the shareholder's stock. Indeed, the Fraudulent Transfer Act "contains a provision expressing a clear intent to preserve common law remedies: 'Unless displaced by the provisions of this Act, the principles of law and equity, including ... the law relating to ... [insolvency] ... supplement its provisions.' " Sessions , 2012 IL 112906, at ¶ 16, 366 Ill.Dec. 245, 980 N.E.2d 45 (citing 740 ILCS 160/11).
CBS has failed to show that there is an "irreconcilable repugnancy" between Sections 5 or 6 of the Fraudulent Transfer Act and the common law rule described in Reilly . The general purpose of the Fraudulent Transfer Act is "to protect a debtor's unsecured creditors from unfair reductions in the debtor's estate to which creditors usually look to security." In re Randy , 189 B.R. 425 (Bankr. N.D. Ill. 1995). The purpose of the common law rule is also to protect creditors, but it addresses the specific situation of when an *459 insolvent corporation repurchases its stock from a shareholder. See Reilly , 31 Ill.2d at 298, 201 N.E.2d 444. "[I]t is not enough to justify the inference of abrogation from the simple fact that a subsequent statute covers some, or even all, of the questions covered by the common law." Sessions , 2012 IL 112906 ¶ 18, 366 Ill.Dec. 245, 980 N.E.2d 45. A party seeking to recover from a shareholder of a corporation who sold his stock to the corporation while it was insolvent could bring a claim under the Fraudulent Transfer Act and under the common law rule, as the Special Receiver does in this case.
The Court acknowledges that the common law rule is not frequently applied, and that since the Fraudulent Transfer Act was enacted, creditors usually bring claims against shareholders for illegal distributions under Sections 5 and 6 of the Fraudulent Transfer Act. See, e.g., In re JOY Recovery Tech. Corp. , 257 B.R. 253 (Bankr. N.D. Ill. 2001). However, a dearth of recent case law does not show that an "irreconcilable repugnancy" exists. The Court finds that the common law rule supplements the Fraudulent Transfer Act in a consistent manner.
B. Elements of the Common Law Rule
The Special Receiver argues that the common law rule requires the Special Receiver to show that (1) TTR purchased its stock from CBS (2) when TTR was insolvent. (ECF No. 31 ¶ 1). The Special Receiver states that "[t]he prohibition on an insolvent corporation purchasing its own shares is a bright line rule in Illinois with no exceptions or defenses." (Id. ¶ 29). CBS responds that if the Court finds the common law rule applies, liability of shareholders can "only be 'based upon the adverse effect of the transaction upon creditors.' " (ECF No. 46 at 32) (internal citation omitted).
After reviewing the cases that have applied the common law rule, the Court finds that the Special Receiver must show that (1) TTR purchased its own stock from CBS, (2) TTR was insolvent, and (3) the redemption of stock "injuriously affect[ed] the interests of creditors." See, e.g., Clapp , 104 Ill. at 31 (holding that the creditor of a corporation that had purchased its own stock from a shareholder could recover from the shareholder because "the transaction was to the injury of appellee as a creditor"); Reilly , 31 Ill.2d at 298, 201 N.E.2d 444 (stating that the common law rule is "based upon the adverse effect of the transaction upon creditors, and not upon the guilt or innocence of the shareholder, who [is] liable even though there [is] no evidence of fraud"); Olmstead v. Vance & Jones, Co., et al. , 196 Ill. 236, 242, 63 N.E. 634 (Ill. 1902) (applying the common law rule where the agreement by the insolvent corporation to buy its own stock did not involve actual or constructive fraud between the parties, but did injure the corporation's creditors); 6A Fletcher Cyc. Corp., Section 2854 ("Purchase of its own shares by a corporation in exchange for its property of equal value, although made in good faith, and without any element of fraud, or anything in the apparent condition of the corporation to interfere with the making of the exchange, will not be sustained if a creditor of the corporation is prejudiced, and it makes no difference that the indebtedness was not at the time established or known to the shareholders.") (citing Clapp , 104 Ill. 26 ).[1]
It is undisputed that TTR repurchased its stock from CBS. To succeed on summary *460 judgment, the Special Receiver must show that there is no genuine issue of material fact that (1) TTR was insolvent when it repurchased its stock from CBS, and (2) TTR's redemption of its stock injured a TTR creditor.
1. Whether TTR Was Insolvent
Under Illinois law, "an entity is insolvent when it has 'stopped paying debts in the ordinary course of business' or is unable to pay its debts as they fall due." People ex rel. Shapo , 323 Ill. App. 3d at 553, 257 Ill.Dec. 6, 752 N.E.2d 1186. The Special Receiver and CBS submitted expert reports on the issue of TTR's insolvency. However, at the hearing before this Court and in briefing submitted after the hearing, the Special Receiver stated that "TTR's financial statements" alone prove that TTR was "unable to pay its debts as they become due in the usual course of business." (See, e.g. , ECF No. 66 at 2). The Special Receiver references an Independent Auditors' Report for the Year Ended December 31, 2012, see ECF No. 32-1 at APP. 39-54, and A/P Aging Summaries for TTR, see itation index="40" url="https://cite.case.law/citations/?q=752%20N.E.2d%201186">id. at APP. 55-95. CBS objects to the Special Receiver's reliance on the A/P Aging Summaries, arguing that the Special Receiver failed to establish a foundation for the A/P Aging Summaries. (See ECF No. 67 at 5-6). The Court agrees. The Special Receiver's expert has not established that the underlying materials on which the A/P Aging Summaries are based are admissible or that the underlying materials were made available to CBS for inspection. See Fed. R. Evid. 1006. The Court declines to consider the A/P Aging Summaries for the purposes of determining the Special Receiver's Motion for Partial Summary Judgment.
Based on the Independent Auditors' Report alone, the Court finds that it cannot determine as a matter of law whether TTR was able to pay its debts in the ordinary course of business as of December 28 and December 31, 2012, and that there is a genuine issue of material fact as to whether TTR was insolvent at the time of the redemption. At trial, the parties should be prepared to present the Court with evidence as to whether TTR was insolvent-as defined by Illinois common law-at the time TTR repurchased its shares from CBS.
2. Whether the Redemption Injured a TTR Creditor
The Special Receiver has not submitted sufficient evidence that TTR's redemption had an adverse effect on a TTR creditor. (See ECF No. 58 at 5, 7). CBS presents evidence that "TTR's liquidity did not change materially between the December 28 and December 31, 2012 dates and/or as a result of the CBS December 31, 2012 Redemption Transaction," and that "[t]he funds paid to CBS were given to TTR by an investor earmarked specifically for the purpose of redeeming CBS's shares and the funds would not have been invested in TTR if CBS's shares had not been redeemed." (See ECF No. 47-2 at 3). The Court finds there is a fact issue as to whether TTR's redemption of its shares from CBS injured a TTR creditor.
IT IS ORDERED that the Special Receiver's Motion for Partial Summary Judgment (ECF No. 30) is DENIED.
SO ORDERED .

The Special Receiver cites American Heritage Inv. Corp. v. Illinois Nat. Bank of Springfield , 68 Ill.App.3d 762, 25 Ill.Dec. 431, 386 N.E.2d 905 (1979) and In re L & S , 60 B.R. 937 (Bankr. N.D. Ill. 1986) in support of her argument that injury to the creditor is not required under the common law rule. (See ECF No. 31 ¶ 29). However, these cases are inapposite because they analyze Section 6 of the Illinois Business Corporations Act of 1975 (now Section 9.10 of the current BCA), which establishes liability for directors, and they do not analyze the common law rule, which establishes liability for shareholders.